COMMONWEALTH *vs.* DAVID W. NOBLE.

No. 92-P-699.

Suffolk. February 11, 1993. - April 29, 1993.

Present: FINE, JACOBS, & LAURENCE, JJ.

Further appellate review granted, 415 Mass. 1105 (1993).

*Evidence,* Testimony before grand jury, Intent. *Homicide. Joint Enterprise.*

This court adopted the test set forth in *United States* v. *Orrico,* 599 F.2d 113, 119 (6th Cir. 1979), for determining whether grand jury testimony by a witness at a criminal trial is adequately corroborated so as to be admissible as probative evidence. [418-420]

At a murder trial, a witness's grand jury testimony that was inconsistent with her trial testimony was the only source of support for the central allegations of the charge, the defendant's knowledge and intent, and, being insufficiently corroborated, was not admissible as probative evidence at trial. [420-422]

At a criminal trial, the evidence of the defendant's knowledge and intent was insufficient to support a verdict of guilty of second degree murder on a theory of joint venture. [422]

INDICTMENT found and returned in the Superior Court Department on September 26, 1990.

The case was heard before *Guy Volterra,* J.

*Juliane Balliro* for the defendant.

*Kenneth H. Anderson,* Assistant District Attorney (*Daniel C. Mullane* with him) for the Commonwealth.

FINE, J. The victim was shot and killed by an individual, apparently (according to testimony at trial) one Michael Driggers, who has never been apprehended. A jury convicted the defendant of the victim's murder (second degree) on a joint venture theory. The defendant contends on appeal that the judge erred in admitting as substantive evidence against him the statement of a witness before the grand jury inconsistent with her testimony at trial. The issue turns on whether the statement before the grand jury was adequately

corroborated at trial by "other evidence tending to prove the issue." *Commonwealth* v. *Daye*, 393 Mass. 55, 75 (1984).[1]

We summarize the evidence, apart from the statement to the grand jury, presented through the victim's fiancée and two young women who lived near the scene of the shooting. The victim and his fiancée lived in Dedham and used crack cocaine. Between 8:00 and 9:00 P.M. on September 4, 1990, they drove to the Franklin Hill Housing Project in Boston. They stopped the car, and the victim, in the passenger seat, told a man who approached them that he wanted to buy drugs. The man, wearing dark clothes with a hood, walked away about ten feet, leaned over, and returned with crack cocaine, which he handed to the victim. Once the drugs were in his hand, the victim told his fiancée to "hit it," and they drove off without paying. The evidence suggested that Driggers was the individual dressed in dark clothes who approached the victim's car. Although the defendant and Driggers were cousins, and although the defendant, Driggers, and a third young man sometimes sold drugs together in the area, there was no evidence that the defendant was present or had anything to do with this incident.

A few hours later (at around 2:00 A.M.), having smoked the crack cocaine and wanting more, the victim and his fiancée returned to a spot about one hundred yards from where they had stopped previously. They were in the same car, with the victim again in the passenger seat, and again with no intention of paying for the drugs. The defendant, dressed in a light-colored jacket, approached the car and asked what the victim wanted. When the victim said he wanted cocaine, the defendant walked around a building, out of sight of the vic-

---

[1]In *Commonwealth* v. *Daye*, 393 Mass. at 73-75, the court abandoned the common law rule that such evidence was admissible only for impeachment purposes and held that "a prior inconsistent statement is admissible as probative if made under oath before a grand jury, provided the witness can be effectively cross-examined as to the accuracy of the statement, the statement was not coerced and was more than a mere confirmation or denial of an allegation by the interrogator, and other evidence tending to prove the issue is presented." *Id.* at 75. See also *Commonwealth* v. *Berrio*, 407 Mass. 37, 45 (1990); *Commonwealth* v. *Tiexeira*, 29 Mass. App. Ct. 200, 203-204 (1990). Compare *Commonwealth* v. *Fort*, 33 Mass. App. Ct. 181, 186 (1992). Such evidence is admissible under Fed.R.Evid. 801(d)(1)(A).

tim and his fiancée, and had a conversation with Driggers. The two exchanged jackets, inferably so that the victim and his fiancée would think the person returning was the one from whom they had just sought drugs, and not the one with whom they had dealt earlier in the evening. Driggers then walked to the car in which the victim and his fiancée were waiting. The Commonwealth's evidence was conflicting as to whether the defendant remained behind the building or followed Driggers and stood some distance away from the car. When Driggers asked the victim what he wanted and was told "a couple," Driggers said, "All's you're going to get is this," and he pulled out a gun and shot and killed the victim.

A Boston police officer testified that a few days later he stopped the defendant on the street. A police radio, loud enough for the defendant to hear, reported that the defendant was "wanted by homicide." The defendant immediately knocked over two other officers and fled, finally being arrested a quarter of a mile away.

The grand jury testimony in issue came from Alicia Carr, one of the two young women who lived near the scene of the incident and testified at trial. At both the trial and at the proceedings before the grand jury, which took place only three weeks after the shooting, she testified that she had observed the defendant and Driggers in conversation before the shooting. A member of the grand jury asked her, "[W]hat were they talking about?" Carr answered: "They came the first time and they wanted five gems and they had run off with their five gems and they didn't pay them. So [Driggers] said when he seen them, he was going to shoot them." According to Carr's grand jury testimony, the conversation took place "[o]utside earlier that night before he shot at them." At trial, Carr denied knowing what the defendant and Driggers said in the course of their conversation. On voir dire and on cross-examination, she admitted that she made the statement before the grand jury but testified that she had misunderstood the juror's question and that she had been told about the conversation between Driggers and the defendant but had not actually heard it.

Defense counsel objected to Carr's grand jury testimony on various grounds, including a lack of sufficient corroboration, but the judge overruled the objection, stating his view that there was other sufficient evidence linking the de-

fendant to the victim's death. There was, to be sure, no other direct evidence, independent of the grand jury testimony, of one of the crucial facts essential for the defendant's conviction of murder, a specific intent crime, on a joint venture theory: that the defendant knew that Driggers intended to shoot the victim. See *Commonwealth v. Soares*, 377 Mass. 461, 470, cert. denied, 444 U.S. 881 (1979); *Commonwealth v. Longo*, 402 Mass. 482, 486 (1988); *Commonwealth v. Mandile*, 403 Mass. 93, 100 (1988); *Commonwealth v. Walsh*, 407 Mass. 740, 743 (1990); *Commonwealth v. Stewart*, 411 Mass. 345, 350 (1991); *Commonwealth v. Smith*, 413 Mass. 275, 281 (1992). There was, however, some circumstantial evidence to that effect presented at trial. "A person's knowledge or intent is a matter of fact, which is often not susceptible of proof by direct evidence, so resort is frequently made to proof by inference from all the facts and circumstances developed at the trial. . . . The inferences drawn by the jury need only be reasonable and possible and need not be necessary or inescapable." *Commonwealth v. Longo*, 402 Mass. at 487, quoting from *Commonwealth v. Casale*, 381 Mass. 167, 173 (1980). Before examining the circumstantial evidence, we must determine how much corroboration was required as a prerequisite to admission of the grand jury testimony.

In *Commonwealth v. Daye*, 393 Mass. at 74-75, as one of the prerequisites for admitting an inconsistent statement made before the grand jury relating to identification, the court required corroboration of the statement by other identification evidence, but left open what other corroboration would be required where the issue was not identification. In this case, the prior inconsistent statement before the grand jury related to the defendant's state of mind, particularly with respect to his knowledge. That seems to us no less central to the defendant's conviction than was the issue of identification in *Commonwealth v. Daye*, 393 Mass. at 65, 74. Absent proof of the defendant's culpable state of mind, he could not be implicated in a shooting by another person. See *Commonwealth v. Burrell*, 389 Mass. 804, 807 (1983).

Although in its brief discussion of the corroboration requirement the court in *Commonwealth v. Daye*, 393 Mass. at 74-75, cited for comparison purposes *Commonwealth v. Forde*, 392 Mass. 453, 457-458 (1984) (concerning the cor-

roboration requirement for confessions); *Commonwealth* v. *Porter*, 384 Mass. 647, 653 (1981) (holding that a conviction may not be based solely on evidence of consciousness of guilt); and G. L. c. 233, § 20I (requiring corroboration for testimony from immunized witnesses), those references do not offer clearcut guidance in the present situation. The corroboration requirement for confessions and immunized testimony is relatively minimal. See *Commonwealth* v. *Forde*, 392 Mass. at 458 ("The corroboration rule requires only that there be some evidence, besides the confession, that the criminal act was committed by someone, that is, that the crime was real and not imaginary"); *Commonwealth* v. *DeBrosky*, 363 Mass. 718, 730 (1973) (§ 20I requires that "there be some evidence in support of the testimony of an immunized witness on at least one element of proof essential to convict the defendant"). However, grand jury testimony, given without the availability of contemporaneous cross-examination, and especially if retracted later at trial, is generally less reliable than evidence derived from a confession. Perhaps the corroboration requirement for inconsistent grand jury testimony should be comparable to that for evidence of consciousness of guilt, which is of questionable reliability as an indication of guilt of a particular offense. Although references in our cases to the scope of that requirement are usually very general, see *Commonwealth* v. *Montecalvo*, 367 Mass. 46, 52 (1975); *Commonwealth* v. *Best*, 381 Mass. 472, 483 (1980); *Commonwealth* v. *Porter*, 384 Mass. 647, 653 (1981), it is clear that evidence of consciousness of guilt may not be used to supply a missing element of the offense charged. See *Commonwealth* v. *Salemme*, 395 Mass. 594, 602 (1985); *Commonwealth* v. *Mandile*, 403 Mass. at 102.

A helpful test, sometimes relied upon elsewhere, for determining whether grand jury testimony is adequately corroborated has been set forth in *United States* v. *Orrico*, 599 F.2d 113, 119 (6th Cir. 1979), in the following terms: "[Statements before a grand jury] may be used to corroborate evidence which otherwise would be inconclusive, may fill in gaps in the Government's reconstruction of events, or may provide valuable detail which would otherwise have been lost through lapse of memory." However, such statements may not support a conviction when they are "the only source of support for the central allegations of the charge." *Id.* at 118. See

*State* v. *Moore*, 485 So. 2d 1279 (Fla. 1986); *State* v. *Robar*, 157 Vt. 387, 394-395 (1991). The *Orrico* test, although more elaborately stated, is similar to the requirement in our cases for corroboration of evidence of consciousness of guilt. We think it is an appropriate test to apply in this situation. It recognizes that evidence given by a witness under oath before a grand jury has value in the truth-seeking process because it is given closer in time to the criminal incident to which it relates, when the witness's memory is fresher than it is at trial and before intervening events may have influenced him to testify falsely, and it is subject to being tested by cross-examination at trial. On the other hand, the test gives recognition to the problem with grand jury evidence — that it is untested by contemporaneous cross-examination — and the test, therefore, protects a defendant against undue reliance on such evidence to obtain a conviction.

We turn to the evidence presented at trial to determine whether there is reasonable support, apart from the grand jury testimony, for the central allegations of the charge, that the defendant knew of the earlier incident involving the victim and of Driggers' intent to shoot him and that the defendant shared that intent.

We think the evidence, apart from Carr's statement to the grand jury, left the issue of the defendant's knowledge and intent a matter of speculation. There is no evidence that he was present during the first incident and, thus, no evidence of any hostility towards the victim. See *Commonwealth* v. *Mandile*, 403 Mass. at 100. Neither the fact that the defendant and Driggers were cousins, nor the fact that they, along with another, sometimes sold drugs together, is indicative of the defendant's specific knowledge of the earlier incident or of Driggers' intent to take revenge on the victim by shooting him. As none of the witnesses testified to having seen a gun before Driggers was approaching the car,[2] there is no basis

---

[2]The victim's fiancée testified that the "kid in the dark blue hood" (Driggers) "pulled out a gun" when he was at the car talking to the victim. The witness Alicia Carr was asked whether she saw anything before Driggers "got out to the car." She said, "Yes . . . The black handled gun." She was then asked, "Did you see the gun before or after [Driggers] put on the jacket he got from [the defendant]?" She answered, "I think it was after." She testified, further, that Driggers put the gun in his pants and went up to the car. The other young woman who lived in the project and

for assuming that the defendant knew Driggers had a gun. See *Commonwealth* v. *Clark*, 363 Mass. 467, 473 (1973); *Commonwealth* v. *Fickett*, 403 Mass. 194, 198 (1988); *Commonwealth* v. *Smith*, 413 Mass. at 281. Contrast *Commonwealth* v. *Soares*, 377 Mass. at 471; *Commonwealth* v. *Longo*, 402 Mass. at 488; *Commonwealth* v. *Stewart*, 411 Mass. at 350-352. The Commonwealth's witnesses left it unclear whether the defendant followed Driggers around the building to the car or whether he remained behind the building when the shooting occurred. Neither his presence, nor his availability to render aid at the immediate scene of the shooting, therefore, was proved.

The most significant evidence, of course, is the exchange of jackets. Given the likely purpose of the exchange, to mislead the victim and his fiancée about Driggers' identity, the defendant's participation furthered the criminal plan. Without some indication of the content of any conversation that might have taken place between Driggers and the defendant before the clothing exchange, however, we would have to speculate about what reason for it Driggers might have expressed to the defendant. Although Driggers may have discussed with the defendant his intention to shoot the victim, it is just as likely that he asked the defendant for his jacket without explaining why he wanted it or that he gave a false or vague reason, for example, that he wanted to threaten or frighten the victim. It is of some significance that, according to the evidence, Driggers left the scene immediately after the shooting but the defendant did not.

Finally, in light of the defendant's drug activities, the evidence of his flight from the police several days after the shooting, while admissible, would not be enough to take the evidence over the required threshold. Compare *Commonwealth* v. *Stewart*, 398 Mass. at 349-352. We conclude that Carr's testimony before the grand jury was insufficiently corroborated because it was the only reasonable support for the central allegation of the charge, and any inference as to that allegation which could be derived from the other evidence was "impermissibly remote." *Commonwealth* v. *Mandile*, 403 Mass. at 101.

---

testified for the Commonwealth said she first saw the gun when Driggers was at the car.

Based on our reasoning on the corroboration issue, we conclude that, without the grand jury statement, there was insufficient evidence to overcome the defendant's motion for a required finding of not guilty.

The judgment is reversed, the verdict is set aside, and a new judgment is to be entered for the defendant.

*So ordered.*