## COMMONWEALTH vs. DAVID W. NOBLE.

Suffolk. December 7, 1993. - March 16, 1994.

Present: WILKINS, ABRAMS, NOLAN, LYNCH, O'CONNOR, & GREANEY, JJ.

*Evidence*, Testimony before grand jury, Intent. *Homicide. Joint Enterprise.*

Discussion with reference to *Commonwealth v. Daye*, 393 Mass. 55 (1984), and *United States* v. *Orrico*, 599 F.2d 113 (6th Cir. 1979), of the circumstances under which a witness's prior inconsistent grand jury testimony may be admitted at a criminal trial as substantive evidence of a defendant's guilt. [344-346]

At the trial of a murder indictment on a joint venture theory, a witness's grand jury testimony that was inconsistent with the witness's trial testimony was properly admitted for its probative value where the grand jury statements corroborated inferences, already apparent from the circumstantial evidence, of the defendant's knowledge and intent. [346-347]

At a criminal trial, a witness's disavowal of certain statements she had made to the grand jury, which were correctly admitted as substantive evidence, presented an issue of credibility for the jury and did not render the grand jury statements inadmissible. [347]

INDICTMENT found and returned in the Superior Court Department on September 26, 1990.

The case was heard before *Guy Volterra*, J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Juliane Balliro* for the defendant.

*Kenneth H. Anderson*, Assistant District Attorney (*Daniel C. Mullane*, Assistant District Attorney, with him) for the Commonwealth.

LYNCH, J. The defendant was indicted on a charge of murder in the first degree. A jury found him guilty of murder in the second degree. The Appeals Court reversed the convic-

tion, 34 Mass. App. Ct. 415 (1993), and we granted the Commonwealth's application for further appellate review. We affirm the judgment of the Superior Court.

The evidence would have permitted the jury to find the following: Kieran McCarthy drove with James Murphy (victim), her fiancé, to the Franklin Hill housing project in the Dorchester section of Boston between 8 and 9 P.M. on September 4, 1990, with the intention of obtaining some crack cocaine. She pulled over to a curb and a man wearing dark clothes with a hood approached the automobile. The victim told him that he wanted to buy drugs. The man walked approximately ten feet away and then returned to the automobile and handed the victim the cocaine. The victim instructed McCarthy to "hit it" and they sped away without paying. The man was visibly angry and was swearing as the couple drove away. The evidence suggests that the man who provided the cocaine was Michael Driggers, the defendant's cousin, with whom the defendant customarily sold drugs. There was no evidence, however, that the defendant was involved in this particular transaction.

Several hours later, after having smoked the crack cocaine, the victim and McCarthy returned to the Franklin Hill housing project for more drugs and stopped approximately one hundred yards from their previous stop. The defendant, dressed in a yellow and black jacket, approached the automobile and the victim told him that he wanted drugs. The defendant then walked around a building. While out of sight of the victim and McCarthy, the defendant had a conversation with Driggers (the content of which is unknown) and then exchanged jackets with Driggers. Driggers then approached the automobile and told the victim, "All's you're going to get is this," pulled out a gun, and shot the victim. The jury could have found that the defendant approached the vehicle with Driggers, and that Driggers left the scene immediately after the shooting but that the defendant remained at the scene.

The arresting officer, a member of the housing authority police force, testified that, when he stopped the defendant several days later, the defendant overheard the police radio

broadcast that he was wanted by Boston police for murder, and at that point the defendant knocked over two police officers and attempted to evade arrest by running away. After a short chase the defendant stopped and was arrested by the police.

The Commonwealth tried the defendant on a criminal joint venture theory.[1] One witness, Alicia Carr, testified before the grand jury that, after the victim's first visit, she heard Driggers and the defendant talking about the theft and Driggers said "when he seen them [the victim and McCarthy], he was going to shoot them."[2] At trial, Carr testified that she did not actually hear the conversation but that others had told her about it. She stated she remembered testifying at the grand jury hearing but could not remember the content of her testimony. The judge admitted the prior in-

---

[1]To sustain its burden of proof on a joint venture theory, the Commonwealth must prove that the "defendant was (1) present at the scene of the crime, (2) with knowledge that another intends to commit the crime or with intent to commit a crime, and (3) by agreement is willing and available to help the other if necessary." *Commonwealth* v. *Mandile*, 403 Mass. 93, 99-100 (1988), quoting *Commonwealth* v. *Bianco*, 388 Mass. 358, 366, *S.C.*, 390 Mass. 254 (1983). "To be convicted of murder on a joint venture theory '[a] joint venturer need only intend that the victim be killed or know that there is a substantial likelihood of the victim's being killed.'" *Commonwealth* v. *Stewart*, 411 Mass. 345, 350 (1991), quoting *Commonwealth* v. *Podlaski*, 377 Mass. 339, 347 (1979).

[2]Following a voir dire examination, the judge allowed Carr's grand jury testimony to be read into the record by the prosecutor. There was no objection directed to the accuracy of the portions quoted by the prosecutor. A transcript of the testimony was not admitted in evidence. The trial transcript reads as follows:

Q.: "Do you remember a grand juror saying to you, 'Had Michael or David talked about anything that happened before that incident,' meaning the shooting incident, and you answering 'Before?' And the juror saying 'Were they upset? Were they talking?', and your answer 'Yes; I heard them talking'? Did you say that in the grand jury?"

A.: "I don't remember."

Q.: "And then the grand jurors saying to you, 'What were they talking about?', and your answer 'That they came the first time and they wanted five gems, and they run off with their five gems and they didn't pay them. So, Michael said when he seen them, he was going to shoot them.' And the juror saying to you, 'When did Michael say that?', and your answer 'Outside earlier that night, before he shot at them.'"

consistent grand jury statement as substantive evidence of the defendant's guilt.

The defendant asserts that the grand jury testimony was impermissibly admitted because of the lack of corroborative evidence. He claims that, in order to sustain its burden of proof on the theory presented, it was incumbent on the Commonwealth to prove that Driggers was the individual from whom the victim stole drugs earlier that evening, that the defendant was aware when the victim returned that he was the person who had stolen the drugs, and that the defendant was aware of Driggers' intention to shoot the victim. The defendant contends that the extrajudicial statements were the only evidence offered by the Commonwealth to support its claim that the defendant was aware that the victim had stolen drugs from Driggers earlier that evening and of his intent to shoot the victim.

The Commonwealth contends that other evidence supported the inference that the defendant knew that the victim and McCarthy were the same people who had stolen the drugs from Driggers earlier, that he knew Driggers had a gun and planned on shooting them, and that he assisted by switching jackets with Driggers.

We held in *Commonwealth* v. *Daye*, 393 Mass. 55, 75 (1984), that "a prior inconsistent statement is admissible as probative [evidence] if made under oath before a grand jury, provided the witness can be effectively cross-examined as to the accuracy of the statement, the statement was not coerced and was more than a mere confirmation or denial of an allegation by the interrogator, and other evidence tending to prove the issue is presented." Although *Daye* concerned grand jury testimony relevant to identification, we have made clear that our holding in *Daye* is not limited only to identification evidence. *Commonwealth* v. *Berrio*, 407 Mass. 37, 45 (1990).

We stated in *Daye*, *supra* at 74, that "we will not permit convictions based exclusively on inconsistent extrajudicial testimony to stand." In *Daye*, where the issue was a prior identification of the defendant, we held that the Common-

wealth "must produce identification evidence in addition to a prior inconsistent statement in order to meet its burden of proof." *Id.* We left open "what other evidence would be required where the issue to which the prior inconsistent statement relates is not identification." *Id.* at 75. The facts of this case present us with an opportunity to resolve that issue where the grand jury testimony relates not to identification but to an essential element of a crime, the defendant's knowledge and intent.

In answering this question, the Appeals Court applied the test set forth in *United States* v. *Orrico*, 599 F.2d 113, 119 (6th Cir. 1979), which states that such grand jury testimony "may be used to corroborate evidence which otherwise would be inconclusive, may fill in gaps in the Government's reconstruction of events, or may provide valuable detail which would otherwise have been lost through lapse of memory." *Commonwealth* v. *Noble*, 34 Mass. App. Ct. 415, 420 (1993). The court in *Orrico* opined that, "when such evidence [prior inconsistent grand jury testimony] is the only source of support for the central allegations of the charge . . . we do not believe that a substantial factual basis as to each element of the crime providing support for a conclusion of guilt beyond reasonable doubt has been offered by the Government." *United States* v. *Orrico, supra* at 118. We agree with the Appeals Court that this test gives appropriate weight to the value of testimony that is closer in time to the events in question yet recognizes that those statements were made without the benefit of contemporaneous cross-examination. *Commonwealth* v. *Noble, supra.*

We disagree, however, with the Appeals Court's application of the *Orrico* test.[3] While the remaining evidence against the defendant is circumstantial, the probative value of such evidence has long been recognized, *Commonwealth* v.

---

[3]While the Appeals Court set forth the test of *United States* v. *Orrico*, 599 F.2d 113 (6th Cir. 1979), it proceeded to analyze the facts to determine whether the remaining evidence, without the grand jury testimony, would have been sufficient to establish the elements of a joint venture. Our reading of *Orrico* does not require such a stringent analysis.

*Montecalvo*, 367 Mass. 46, 52 (1975), and may even rise to a level that proves guilt without any direct evidence. See *Commonwealth* v. *Porter*, 384 Mass. 647, 654 (1981) (circumstantial evidence may reach qualitative level necessary to defeat motion for required finding of not guilty).

We review the evidence of the defendant's knowledge and intent. We do not view as insignificant the testimony that the defendant routinely sold drugs with Driggers. The fact that Driggers was visibly upset and swearing after he had been robbed and that Driggers and the defendant conversed following the swindle supports the logical inference that Driggers told the defendant, his partner, about the swindle and of his intent to seek revenge. "[I]nferences drawn by the jury need only be reasonable and possible and need not be necessary or inescapable." *Commonwealth* v. *Stewart*, 411 Mass. 345, 350 (1991), quoting *Commonwealth* v. *Casale*, 381 Mass. 167, 173 (1980). Yet, we are mindful that mere possibilities are insufficient to sustain a guilty verdict. *Commonwealth* v. *Walsh*, 407 Mass. 740, 745 (1990).

Even more incriminating is the defendant's conduct in conversing with Driggers after acknowledging the victim's request for more drugs and then exchanging jackets with Driggers which, again, suggests that he was aware of Driggers's intent to approach the victim at close proximity. The knowledge that in order to do so Driggers had to change his appearance permits the inference that the defendant knew of the prior events. Thus there was evidence apart from the grand jury testimony that the defendant knew of the victim's previous drug theft, knew of Driggers's anger and intent to seek revenge, and that he aided this endeavor by swapping jackets.[4] "A person's knowledge or intent is a matter of fact, which is often not susceptible of proof by direct evidence, so resort is frequently made to proof by inference from all the facts and circumstances developed at the trial." *Common-*

---

[4]Since the defendant fled on hearing on the police radio that he was wanted for murder, his attempt to evade arrest was evidence of his consciousness of guilt.

*wealth* v. *Stewart, supra,* quoting *Commonwealth* v. *Casale, supra.* The grand jury statements thus assisted the fact finders by corroborating the inferences already apparent from the circumstantial evidence of the defendant's knowledge and intent and were properly admitted for their probative value.

The defendant also argues that Alicia Carr was not a percipient witness to the conversation, and that therefore it was error to admit the prior inconsistent statements as probative evidence.[5] Before the grand jury, however, Carr asserted that she personally had heard the conversation. It was the witness's assertion at trial that she learned of the content of the conversation secondhand that made her testimony inconsistent from her grand jury testimony. We agree with the Commonwealth that to bar her grand jury testimony as inadmissible hearsay would be to give her disavowal of her grand jury testimony more credence than her earlier grand jury testimony. That credibility determination was for the jury, not the judge. Since the grand jury testimony clearly states that she heard the conversation, the defendant's argument that it was based on hearsay fails.

Since we conclude that the grand jury testimony was properly admitted for its probative value, the defendant's argument that his motion for a required finding of not guilty was erroneously denied also fails.

*Judgment affirmed.*

---

[5]In *Commonwealth* v. *Daye,* 393 Mass. 55, 73 n.18 (1984), we predicated "probative use of prior inconsistent statements on a showing that a declarant was a percipient witness to the events in question. If it is clear from the context in which the statement was made that the statement was based on hearsay, rather than personal knowledge, the statement may not be admitted as probative evidence."