Troy, Paul E., J.
Pursuant to G.L.c. 31, §44 and G.L.c. 30A, §14, plaintiff, the Mássachusetts Department of Correction (“DOC”), appealed the Civil Service Commission’s (“Commission”) decision that the DOC did not have just cause for terminating two employees. Currently before the court are the parties’ cross motions for judgment on the pleadings. For the reasons that follow, plaintiffs motion is ALLOWED and defendants’ motion is DENIED.
BACKGROUND
Defendants, Sergeant Richard Mullen and Lieutenant Benjamin McGuiness, were employed by the DOC as security officers assigned to the Massachusetts Alcohol and Substance Abuse Center (“MASAC”) until they were terminated on January 14, 2005. The officers’ termination was the result of an investigation into the officers’ alleged use of excessive force upon an inmate. The following are the allegations which appear in the record that gave rise to the investigation.
On November 1, 2003, inmate Steven Dearborn attacked another inmate while located in MASAC’s Alpha Unit. Dearborn was thereafter placed temporarily in a holding cell where he verbally abused Mullen, McGuiness, and a fellow female staff member. A short time later, Mullen and McGuiness entered Dearborn’s cell in order to prepare him for transfer to the Massachusetts Treatment Center (“MTC”). Sergeant Scott Nedley, the Acting Lieutenant, joined Mullen and Mc-Guiness, the Shift Commander, in Dearborn’s cell in response to what sounded like loud screams. Nedley then helped Mullen and McGuiness force Dearborn to the ground in order to put him in restraints. While holding Dearborn in place, Nedley heard Mullen punch Dearborn and felt Dearborn’s body tense up in response to the punches. Nedley also witnessed McG-uiness act as a “lookout” and intentionally step on Dearborn’s legs. Nedley then left the cell. A short while later, Nedley watched as Mullen led Dearborn from his cell to the transportation vehicle. During the transfer, Nedley witnessed Mullen twist Dearborn’s wrists and heard Mullen call Dearborn a derogatoiy name.
Nedley did not file an incident report until November 20,2003. An ensuing investigation led by Sergeant Stephen Kennedy occurred in which Kennedy interviewed Nedley, Mullen, McGuiness, Dearborn, and several other inmates and organizational staff. During McGuiness’s interview, he referred to Dearborn as a “fruitcake.” Based on the information elicited during the investigation, Sergeant Kennedy found that Mullen and McGuiness used excessive force upon Dear-born in his cell, that Mullen taunted and used excessive force on Dearborn during his transfer to MTC, that Mullen and McGuiness lied to investigators, and that McGuiness exhibited unprofessional conduct during his interview. Kennedy also concluded that Sergeant Nedley failed to intercede during the incidents. On Januaiy 14, 2005, after a hearing, Mullen and McGuiness were terminated.[2]
Mullen and McGuiness thereafter filed a timely appeal with the Commission. On August 3,2005, a hearing was held before Commissioner Daniel M. Henderson (“Commissioner”). The Commissioner received documentary evidence and heard testimony from Sergeant Nedley, Sergeant Kennedy, and Deputy Director of Employee Relations, Dennis Cullen. Neither Sergeant MuEen nor Lieutenant McGuiness testified. On February 9, 2006, the Commissioner issued his written decision which, after a vote of the Commission, became the final decision of the Commission pursuant to G.L.c. 31, §43.
With respect to Sergeant Nedley, the Commissioner found that he was not a percipient witness and that he *136 was not credible for a variety of reasons, including his demeanor on the witness stand, his delay in reporting the incidents, his failure to intervene despite being the superior officer on the day in question, and the fact that he was disciplined for his inaction. Commenting on Nedley’s alleged emotional distress, the Commissioner stated, “if Nedley’s state of mind was as he described it; his wife is right, he does need a therapist.” The Commissioner also found that Sergeant Kennedy was not a credible witness and that his investigation was faulty because Kennedy’s lack of investigative experience caused him to form a “tainted and prejudiced” conclusion as to the underlying events. Moreover, the Commissioner found that Kennedy and Cullen were not percipient witnesses to the alleged uses of force and that both had a vested interest in upholding the officers’ termination as they each participated personally in issuing the initial discipline.
As for the underlying events, the Commissioner found that Mullen and McGuiness did not use excessive force in placing Dearborn in restraints and that “[a]ny use of force that was used was reasonable and appropriate, considering the totality of the circumstances known to them at the time.” The Commissioner also found that Sergeant Mullen “needed to apply hand-to-hand contact to inmate Dearborn [during his transfer to MTC] so as to prevent Dearborn from turning his head and head butting, or using his legs in a way to attack Mullen” and that such use of force was not excessive. Moreover, the Commissioner found that an inmate “might accurately refer to Dearborn as a very dangerous fruitcake” and “[i]n McGuiness’ defense, he is not a psychiatrist and may not know the proper medical terminology [of the word ‘fruitcake’].” Regarding the discipline issued by the DOC, the Commissioner found that “[t]he DOC practice of categorically terminating employees found to have used excessive force on an inmate while in restraints is an unreasonable general practice.”
In accordance with the findings above, the Commissioner concluded that the DOC failed to establish just cause for terminating Mullen and McGuiness and that “[ujnder the totality of the known circumstances, [Mullen and McGuiness] acted fairly and reasonably to carry out their dangerous, unpredictable and precarious assignment, while at the same time protecting themselves.” The Commissioner therefore ordered that Mullen and McGuiness be reinstated to their respective positions without any lost pay or benefits. After the Commission denied the DOC’s motion for reconsideration, the DOC commenced the present action in this court pursuant to G.L.c. 31, §44 and G.L.c. 30A, §14.
DISCUSSION
Pursuant to G.L.c. 31, §2(b), the Commission was empowered to determine, on the basis of the evidence before it, whether the DOC had sustained its burden of proving, by a preponderance of the evidence, that there was just cause for the officers’ termination. Brackett v. Civil Serv. Comm’n, 447 Mass. 233, 241 (2006). On appeal to this court, the question becomes whether the Commission’s decision was arbitrary or capricious, an abuse of discretion, based upon an error of law, or unsupported by substantial evidence. G.L.c. 30A, §14; Massachusetts Sober Hous. Corp. v. Automatic Sprinkler Appeals Bd., 66 Mass.App.Ct. 701, 704-05 (2006). Substantial evidence is “such evidence as a reasonable mind might accept as adequate to support a conclusion.” Kippenberger v. Bd. of Registration in Veterinary Med., 448 Mass. 1035, 1036 (2007). Under this standard of review, a judge is required to give due weight to the experience, technical competence, and specialized knowledge of the Commission, as well as the discretionary authority conferred upon it. Brackett, 447 Mass. at 242. The DOC bears the burden of proving the invalidity of the Commission’s decision. Id.
The DOC contends that the Commission’s decision is not supported by substantial evidence. It should be noted that the foundation of the Commission’s decision is that the DOC failed to prove that just cause existed for the officers’ termination because the testimony of the DOC’s primary witness, Sergeant Nedley, was not credible. This court recognizes that a witness’s credibility is a province distinctly reserved for the hearing officer’s determination. Leominster v. Stratton, 58 Mass.App.Ct. 726, 729 (2003). In this case, however, the DOC contends that certain subsidiary factual findings which the Commissioner relied upon in discrediting Nedley’s testimony were erroneous. This court has the authority to review these findings to determine whether they were supported by substantial evidence. See id. at 733 (the court’s inability to make different credibility findings is subject to the limitation that a judge may find the agency’s subsidiary findings without support in the record).
A careful review of the administrative record reveals that several of the Commissioner’s factual findings were not supported by substantial evidence. First, the Commissioner found that Nedley was superior in rank to both Mullen and McGuiness on November 1, 2003. In their papers, Mullen and McGuiness admit that Nedley did not outrank McGuiness and that the Commissioner’s decision to the contrary was erroneous. Instead, they argue that the erroneous factual finding is irrelevant because the issue was “never Nedley’s rank as much as it was his lack of credibility.” The two issues, however, are inextricably intertwined. Throughout the Commissioner’s ruling, he relies on the fact that Nedley, as the superior officer, took no immediate action as grounds to discredit his testimony. For example, the Commissioner stated, “[Nedley can’t be believed, in part because after the incident] he did a ‘fence check,’ which means that he voluntarily left the area, of the alleged incident, despite being the superior officer in charge . . .” Also discrediting Nedley’s testimony was the fact that he “could *137 have ordered [Mullen and McGuiness] to follow any reasonable course of action [but failed to do so].” The Commissioner again stated, “Nedley’s testimony [ ] lacks credibility . . . [because] Nedley, a superior officer, failed to intercede and prevent the use of the alleged excessive force against Dearborn.” Thus, it is apparent that the Commissioner relied significantly upon a factual finding that was not supported by substantial evidence as grounds to discredit the entirety of Nedley’s testimony. Although there were other reasons, such as Nedley’s demeanor, which also played a role in discrediting Nedley’s testimony, the court cannot say that this erroneous finding was not a substantial factor in discrediting his testimony, particularly considering the number of times the Commissioner repeated this finding.
Second, the Commissioner concluded that Nedley lacked any credibility because he was not a percipient witness to the use of force on Dearborn. It is true that Nedley did not actually see Mullen punch Dearborn. Nedley did, however, hear and feel Dearborn being punched. An individual who hears or feels an event is a percipient witness to that event. See Commonwealth v. Noble, 417 Mass. 341, 347 (1994) (individual who heard conversation is percipient witness). More importantly, although the Commissioner may have found that Mullen did not punch Dearborn in his cell, he found that Mullen did twist Dearborn’s wrists during his transfer to MTC, an event which was indisputably eye-witnessed by Nedley. The Commissioner did not find that Nedley lied about this incident or lied about witnessing this incident. Rather, the Commissioner found that Mullen’s twisting of Dearborn’s wrists was a use of force, but that it was not an excessive use of force. As such, the finding that Nedley could not be believed because he was not a witness to any use of force on Dearborn is not supported by substantial evidence.
Third, the Commissioner found that Mullen’s use of force upon Dearborn during his transfer was taken “so as to prevent Dearborn from turning his head and head butting, or using his legs in a way to attack Mullen.” There is no evidence in the record that supports this arbitraiy conclusion. Mullen and McG-uiness did not testify. Neither was there any other witness or documentation introduced at the hearing to support a conclusion that Mullen undertook such an action in order to prevent an attack from Dearborn. The Commissioner’s factual conclusion was therefore a byproduct of conjecture and speculation that was not supported by substantial evidence.
Fourth, the Commissioner’s determination that Nedley was not a credible witness is undercut by the apparent personal animus that the Commissioner harbored towards Nedley. In analyzing Nedley’s credibility, the Commissioner discusses at length Nedley’s alleged emotional state as a result of Mullen and McGuiness’s actions. Rather than stating objectively the reasons why the severity of Nedley’s claimed emotional state was not believed, the Commissioner personally derided Nedley. He stated, “if Nedley’s state of mind was as he described it; his wife is right, he does need a therapist.” The Commissioner, in discussing Nedley’s filing of an incident report involving Mullen, also stated, “The purpose of this report is unknown other than the obvious attempt by Nedley to get Kennedy and Mullen in trouble.” Considering that Mullen and McGuiness did not even testify before the Commissioner, there was no evidence to support this conclusion. The same approach was taken with Kennedy as well. In concluding that Kennedy was not a credible witness, the Commissioner stated, “He is an untrained and inexperienced witness who relishes the opportunity to state an opinion about another person’s credibility.” There is no logical explanation for the inclusion of these comments other than the presence of a personal animus towards these witnesses. Even the potential for the existence of a personal distaste for a witness serves to further undermine the validity of the Commissioner’s credibility determinations.
Finally, the DOC argues that the Commissioner exceeded his authority by substituting his judgment for that of the DOC regarding certain discretionary policies. In reviewing a personnel decision, the Commissioner must focus on the fundamental purposes of the civil service system — to guard against political considerations, favoritism, and bias in governmental employment decisions. Town of Falmouth v. Civil Serv. Comm’n, 61 Mass.App.Ct. 796, 800 (2004). When there are overtones of political control or objectives unrelated to merit standards or neutrally applied public policy, then it is appropriate for the Commission as an agency to intervene. Id. However, it is well established that the Commissioner does not have the authority to “substitute [his] judgment about a valid exercise of discretion based on merit or policy considerations by an appointing authority.” Id,, quoting City of Cambridge v. Civil Serv. Comm’n, 43 Mass.App.Ct. 300, 304 (1997).
Here, there was uncontraverted evidence that the DOC employed a policy of terminating employees who were found to have used excessive force on inmates. In reinstating the officers, however, the Commissioner stated that
[t]he DOC practice of categorically terminating employees found to have used excessive force on an inmate while in restraints is an unreasonable general practice. There are many varied, physical, psychological and emotional factors which come into play in a situation in which a violent and disruptive inmate is subdued and restrained by an officer, while at the same time realizing that the officer has to spontaneously make judgments and react, sometimes to unpredictable and therefore unexpected developments. The officer’s primary concern in these situations, should be his own safety and as a *138 result some of his actions are anticipatory and preventive.
With regard to the “fruitcake” comment which contributed to McGuiness’s termination, the Commissioner did not find that the comment was not made. Instead, he found that an inmate “might accurately refer to Dearborn as a very dangerous fruitcake” and that McGuiness, to his defense, “is not a psychiatrist and may not know the proper medical terminology.” Whether the Commissioner’s comments are accurate is not relevant. What matters is that the Commissioner did not find that Mullen and McGuiness were casualties of a politically motivated decision-making process or that they were treated differently than other similarly situated individuals. The Commissioner was reviewing a discretionary disciplinary policy related to the enforcement of neutrally applied standards of conduct and, at least in part, substituted his own judgment for that of the DOC’s regarding these policies. Town of Falmouth, 61 Mass.App.Ct. at 801. As such, the Commissioner exceeded his authority.
After a detailed review of the administrative record, and after considering the entirety of the parties’ arguments, this court concludes that a substantial number of the Commissioner’s factual findings were not supported by substantial evidence. As these findings were significantly relied upon in discrediting Nedley’s testimony, the court finds that the Commissioner’s decision as a whole was not supported by substantial evidence. In addition, the Commissioner exceeded his authority by substituting his judgment for that of the DOC with regard to a discretionary personnel policy. Finally, based upon the comments of the Commissioner discussed above, the court finds that the Commissioner’s decision, which was affirmed by the Commission, was both arbitrary and capricious. Accordingly, the DOC’s motion for judgment on the pleadings must therefore be ALLOWED and Mullen and McGuiness’s motion must be DENIED.
ORDER
For the foregoing reasons, it is hereby ORDERED that plaintiffs motion for judgment on the pleadings is ALLOWED and defendants’ motion is DENIED. Due to the nature of the deficiencies in the Commissioner’s decision and this court’s limited review, this court is not in a position to affirm the DOC’s initial decision to terminate Sergeant Mullen and Lieutenant McGuiness as requested by the DOC. Therefore, the Commission’s decision is hereby VACATED and the case is REMANDED to the Commission for a new hearing. For the reasons stated herein, the Commissioner who presided over the first hearing shall not participate in any further proceedings regarding this matter.

Their employment was terminated for violating Department of Correction’s Rules and Regulations Governing All Employees Rule 8(a) (requiring professional relations with inmates), Rule 10(a) (prohibiting unreasonable use of force), Rule 19(c) (requiring truthful reporting of incidents under investigation) and the Use of Force Policy, 103 C.M.R. §505.08.