COMMONWEALTH vs. DOMINGO TIEXEIRA, THIRD.

No. 89-P-828.

Barnstable. June 11, 1990. - September 10, 1990.

Present: DREBEN, FINE, & PORADA, JJ.

*Homicide. Witness*, Impeachment. *Evidence*, Testimony before grand jury,
   Prior inconsistent statement, Hearsay, Opinion, Spontaneous utterance.
   *Constitutional Law*, Standing to question constitutionality, Self-
   incrimination.

At a criminal trial, a witness's statements before the grand jury were prop-
   erly admitted in evidence for their probative value where the witness in
   her direct testimony had adopted the statements as true. [201-202]
Statements of a witness to a grand jury, adopted by her and properly ad-
   mitted in evidence, did not contain an inadmissible inference or opinion
   and in any event were merely cumulative of other evidence. [202]
The judge at a criminal trial correctly ruled that a witness's grand jury
   testimony could be admitted in evidence for its probative value under
   the principles set forth in *Commonwealth* v. *Daye*, 393 Mass. 55, 73-
   75 (1984). [203-204]
At a murder trial, certain statements of an eyewitness were correctly ad-
   mitted in evidence under the spontaneous utterance exception to the
   hearsay rule. [204-206]
At a murder trial, there was no error in the denial of the defendant's mo-
   tion for a required finding of not guilty. [206-207]
The defendant in a criminal case had no standing to assert that the judge
   erred in overruling a claim by certain Commonwealth witnesses of their
   privilege against self-incrimination. [207]

INDICTMENT found and returned in the Superior Court De-
partment on September 22, 1988.

The case was tried before *Gerald F. O'Neill, Jr.*, J.

*James E. McCall* (*Edward E. Whittemore* with him) for
the defendant.

*Julia K. Vermynck*, Assistant District Attorney, for the
Commonwealth.

PORADA, J. The defendant was convicted by a Superior
Court jury of murder in the second degree. Based on the evi-

dence, the jury could have found that the defendant struck the victim in the head with a miniature bat, causing a "J-shaped" laceration which resulted in the victim's death. The incident was witnessed by four teen-age girls — Naome Lopez, Jennifer Rosado, Heather Ennes, and Carrie Salazar — all of whom were either related to or friends of the defendant. All four testified before the grand jury and at the trial. The defendant's appeal is based on claims of error by the trial judge (a) in admitting in evidence for substantive purposes portions of the grand jury testimony of Naome Lopez and Jennifer Rosado, (b) in admitting in evidence statements made by Heather Ennes to the defendant as part of the "res gestae," (c) in denying the defendant's motion for a required finding of not guilty, and (d) in denying a claim of privilege against self-incrimination to Naome Lopez, Jennifer Rosado, and Heather Ennes. We rule that the judge committed no error and affirm the judgment.

1. *Grand jury testimony of Naome Lopez.* The defendant challenges the judge's ruling permitting the Commonwealth to elicit from Naome Lopez the following testimony after she had been declared a hostile witness:

> THE PROSECUTOR: "Didn't you testify to the Grand Jury that . . . "
> DEFENSE COUNSEL: "Objection."
> THE COURT: "Overruled."
> THE PROSECUTOR — " 'As far as I could tell, he was standing over on top of the man, and the stick was in his hand right there like he had just brought it back down. I didn't see the stick actually hit his head, but I could assume from what I saw.' Didn't you testify to that?"
> THE WITNESS: "Yeah."

The defendant claims the question constituted improper impeachment, did not comply with the prerequisites for probative use of prior inconsistent statements enunciated by the Supreme Judicial Court in *Commonwealth* v. *Daye*, 393 Mass. 55, 73-75 (1984), and contained an inadmissible as-

sumption. The question preceded a line of questions to the witness by the prosecutor designed to elicit what she saw when the defendant encountered the victim. The witness' answers were evasive and ambiguous.

The prosecutor could properly pose leading questions to the witness and attempt to impeach her by a prior inconsistent statement. *Commonwealth* v. *Joyce,* 18 Mass. App. Ct. 417, 425 (1984). The prior statement need not contradict in plain terms the testimony of the witness. It need only tend in a different direction from her current testimony. *Commonwealth* v. *Pickles,* 364 Mass. 395, 402 (1973). However, we need not concern ourselves with the defendant's argument that the witness should have been given an opportunity to explain the statement or that the admission of the evidence contravened the prerequisites for probative use of prior inconsistent statements sworn to before a grand jury because the witness during her direct testimony, also, admitted that this statement to the grand jury was true. In so doing, she adopted her grand jury statement, and it thus acquired full probative value. *Commonwealth* v. *Fiore,* 364 Mass. 819, 823 (1974). *Commonwealth* v. *Daye, supra* at 67 n.13.

We also reject the defendant's claim of reversible error on the ground that Naome Lopez's statement to the grand jury contained an inadmissible assumption. Ordinarily, a witness may testify only to what she observed and may not state an inference or opinion based upon those facts. *Olson* v. *Ela,* 8 Mass. App. Ct. 165, 167 (1979). In certain instances, however, a witness may state the results of her observations, even though this does in some measure involve her opinion or judgment as to matters as they appear to the witness. See *Crafts* v. *McCobb,* 303 Mass. 172, 175-176 (1939). The inference drawn by Naome Lopez in her testimony was permissible because it was the result of her observations. It was the sense of what she saw. Even if it were not a permissible inference and its admission was error, it was harmless error. The evidence was merely cumulative of other evidence from which the jury could draw the same inference. See *infra* part 4.

*2. Grand jury testimony of Jennifer Rosado.* After the judge declared that Jennifer Rosado was a hostile witness and that the prerequisites for the probative use of prior inconsistent statements made by her before the grand jury had been met, he permitted the prosecutor over the objection of the defendant to read the following excerpt from her grand jury testimony to the jury for its probative value:

> THE PROSECUTOR: "Now, you go up. You hear the bushes rustling. You hear something going on up there. You go up, and what do you see?"
> THE WITNESS: "Mingo (the defendant)."
> THE PROSECUTOR: "What is Mingo doing?"
> THE WITNESS: "See, like hitting the guy."

After this testimony, the prosecutor received permission, over the objection of the defendant, to read another excerpt from the grand jury minutes for its probative value as follows:

> THE PROSECUTOR: "But you never said anything to Domingo [the defendant] about what you saw him do and Domingo never said anything to you about which you saw him do is that correct?"
> THE WITNESS: "(Witness shaking head in the negative)."
> THE PROSECUTOR: "You're certain about that Jennifer?"
> THE WITNESS: "Yeah, I didn't — it's not like I saw him kill him. I know he didn't kill the guy."
> THE PROSECUTOR: "How do you know that?"
> THE WITNESS: "Because the guy was halfway dead already. He was."

The defendant challenges the use of these excerpts as probative evidence on the ground that the prerequisites set forth in *Commonwealth* v. *Daye*, 393 Mass. at 73-75, had not been met. In *Daye*, the Supreme Judicial Court ruled "that a prior inconsistent statement is admissible as probative if made under oath before a grand jury, provided the witness can be

effectively cross-examined as to the accuracy of the statement, the statement was not coerced and was more than a mere confirmation or denial of an allegation by the interrogator, and other evidence tending to prove the issue is presented." *Id.* at 75. See also *Commonwealth* v. *Berrio*, 407 Mass. 37, 45 (1990). The judge ruled that these prerequisites had been met. See *Commonwealth* v. *Daye*, *supra* at 74 n.21. His findings are conclusive if there is evidence to support them. *Torre* v. *Harris-Seybold Co.*, 9 Mass. App. Ct. 660, 672-673 (1980).

There was no evidence presented that the statements of the witness had been coerced or were not in her own words. Nor are the witness' grand jury statements the sole evidence in the case linking the defendant to the victim's injuries. The sole remaining issue is whether Jennifer Rosado was available for effective cross-examination as to the accuracy of her statement. She testified that she had been drinking that evening, that she did not remember what she told the grand jury and that she did not remember what happened when the defendant left the car with a bat in his hand. Her memory of the events that evening up to the defendant's encounter with the victim, however, is quite detailed. She remembered that the defendant left the car with a bat but did not remember where he went and what he did until he again got back in the car after the incident. The witness herself testified that she was not saying that she had no memory whatsoever of the events of that evening. Instead, she testified: "I am saying that I was drinking, and I'm not going to come on the stand and say something I am not sure of." After observing the witness' demeanor and listening to her testimony, the judge ruled that, while testifying at trial, she had a present memory of what happened on the night of the incident. We cannot say that he erred in allowing her grand jury testimony to be used for its probative value.

3. *Spontaneous utterances.* The defendant objected to the admission in evidence of statements made by Heather Ennes to the defendant immediately after his encounter with the victim. He claims they were not spontaneous utterances. The

statements were introduced by the prosecutor through the testimony of Naome Lopez, who adopted the following testimony before the grand jury:

> THE PROSECUTOR: "Tell the jury what the things were that were being said were?"
>
> THE WITNESS: "Mingo and Heather was arguing and they were swearing at each other and stuff."
>
> THE PROSECUTOR: "Did you testify in front of the Grand Jury that she was mad with him and that she was cussing him out?"
>
> THE WITNESS: "Yeah."
>
> THE PROSECUTOR: "Did you also testify that Heather said to him, 'Why did you have to do that?' "
>
> THE WITNESS: "Yes."
>
> THE PROSECUTOR: "And that he didn't say anything in response to that question?"
>
> THE WITNESS: "Yes."
>
> THE PROSECUTOR: "Then he said, 'Don't worry about.' Do you remember saying that to the Grand Jury?"
>
> THE WITNESS: "Yeah. They was arguing. They were . . . ."

Upon further questioning by the prosecutor, Naome Lopez admitted that she testified in front of the grand jury that Heather was mad and said to the defendant (immediately after he got back in the car after his encounter with the victim), "Why did you have to hit him with the club? Why couldn't you just — if you wanted — to him, why couldn't you use your own hands?"

The judge admitted these statements of Heather Ennes to the defendant as part of the "res gestae." The Supreme Judicial Court has indicated that it prefers the term "spontaneous exclamation" or "excited utterance" because the term "res gestae" is ambiguous, confusing, and unnecessary. *Commonwealth* v. *McLaughlin*, 364 Mass. 211, 221 & n.3 (1973). Under the spontaneous exclamation or excited utterance exception to the hearsay rule, "a statement is admissi-

ble if its utterance was spontaneous to a degree which reasonably negated premeditation or possible fabrication and if it tended to qualify, characterize and explain the underlying event." *Commonwealth* v. *Fuller*, 399 Mass. 678, 682 (1987), quoting from *Blake* v. *Springfield St. Ry.*, 6 Mass. App. Ct. 553, 556 (1978); *Commonwealth* v. *O'Connor*, 407 Mass. 663, 670 (1990). The utterance need not be contemporaneous with the event, "provided there has not been time for the exciting influence to lose its sway and to be dissipated." *Rocco* v. *Boston-Leader, Inc.*, 340 Mass. 195, 197 (1960). The trial judge has broad discretion in determining whether an utterance meets the test of admissibility. *Rocco, supra* at 196-197. There was no abuse of discretion by the judge in this case. The statements were made immediately after the event and in circumstances which reasonably negated premeditation or fabrication.

4. *Motion for required finding of not guilty.* The defendant contends that if one excludes as evidence those portions of the grand jury testimony and trial testimony of Naome Lopez which the defendant claims were erroneously admitted, there was insufficient evidence to satisfy a rational trier of fact of the defendant's guilt beyond a reasonable doubt. We, however, have ruled that this testimony was properly admitted.

The Commonwealth presented expert medical evidence that the victim sustained a "J-shaped" laceration which substantially contributed to his death and that a miniature bat, long and with a rounded end, was consistent with an instrument which would make the "J-shaped laceration" on the victim's scalp. Naome Lopez, Heather Ennes, and Jennifer Rosado all testified that when the defendant left the car occupied by them, he had a miniature bat in his hands. Naome Lopez testified that after the defendant left the car she looked down at the floor, and when she next looked out the window she saw the defendant with the bat in his hands standing over the body of the victim on the ground. Jennifer Rosado, in her grand jury testimony, said she saw the defendant hit the victim. Naome Lopez also testified that the

defendant "said something about — that the [victim] was really bleeding from his head or something like that." She also (on the day following the incident) found blood in the area where the encounter took place. The blood sample taken from that spot was consistent with the victim's blood type. The victim had been examined by a deputy fire chief for injuries about 9:30 P.M. after a fight with someone other than the defendant and no injuries to the scalp were detected at that time. When the victim was reexamined about 11:30 P.M. after his body was found lying in the road, the deputy fire chief noticed a "J-shaped" laceration on the top of the victim's scalp. The encounter between the victim and the defendant occurred sometime after 11:00 P.M. Taking all the evidence in the light most favorable to the Commonwealth, we find no error in the denial of the defendant's motion for a required finding of not guilty.

5. *Privilege against self-incrimination.* The defendant claims it was error for the judge to deny Naome Lopez, Heather Ennes, and Jennifer Rosado the right to exercise the privilege against self-incrimination under the Fifth Amendment to the United States Constitution and art. 12 of the Massachusetts Declaration of Rights. The defendant has no standing to raise the issue. See *Commonwealth* v. *Simpson*, 370 Mass. 119, 121 (1976); *Smith* v. *Commonwealth*, 386 Mass. 345, 349 (1982). In *Simpson, supra*, the Supreme Judicial Court ruled: "The defendant has no standing to argue that the testimony of the two purportedly immunized witnesses was the product of improper grants of immunity. The privilege against self-incrimination was a personal privilege of these witnesses, not assertable by the defendant (citations omitted). He would have had no right to object if a witness had been compelled to testify after the privilege had been validly asserted." The defendant cannot assert a privilege which is personal to the witness. See also *Petitions of the Dept. of Soc. Serv. to Dispense with Consent to Adoption*, 399 Mass. 279, 290 n.21 (1987).

*Judgment affirmed.*