COMMONWEALTH *vs.* JOHN J. PELOQUIN. No. 90-P-890. May 28, 1991. *Evidence*, Judicial discretion, Leading question, Prior inconsistent statement. *Practice, Criminal*, Mistrial, Argument by prosecutor, Instructions to jury, Required finding. *Homicide*.

On May 19, 1987, a Plymouth County grand jury returned an indictment of murder against the defendant. On April 21, 1988, a jury convicted the defendant of murder in the second degree. The defendant has raised four issues on appeal. They are that the judge erred by (1) allowing the prosecutor to conduct an improper direct examination of certain witnesses, (2) denying the defendant's motion for a mistrial, and (3) denying the defendant's motion for a required finding of not guilty. He also claims that certain remarks by the prosecutor in her closing argument were so prejudicial as to require a new trial. We affirm the judgment.

The jury could have found the following from the evidence at trial. On February 20, 1987, the defendant, his close friend John Landolfi, and two others were in the defendant's apartment in Brockton. Two intruders entered the apartment, held the occupants at gunpoint and robbed them. After the assailants left, the defendant enlisted the aid of his half brother, Craig Faria, to help him recover the money taken in the robbery. The defendant, Faria (both armed with handguns), Landolfi, and another individual drove around Brockton in search of one Harris, whom the defendant believed to have been one of the assailants. Upon seeing Harris, the defendant and Faria pursued him. After an apparently unsuccessful confrontation with Harris, the defendant, Faria, and Landolfi returned to the defendant's apartment. Cathy Simpson, sister to both the defendant and Faria, was at the apartment.

Upon their return, an argument developed between the defendant and Faria over their confrontation with Harris. The defendant told Faria that he should have shot Harris and not let him get away. During the argu-

ment, the defendant, who was armed with two handguns, pulled out one of the guns and waved it around. Faria told the defendant, "put it away or I'll stick it up your ass." He also said, "you think you're tough . . . you're nothing without your guns."

The defendant then put away the handgun and took out a larger handgun. He said, "I'm going to do Brockton a favor," crouched down on one knee, and with both hands on the gun, fired three shots at Faria, seated approximately ten feet away. Faria was hit twice in the stomach area and died an hour later in a hospital. After the shooting, the defendant fled the scene, disposing of the guns in a trash barrel. He later surrendered himself to the Brockton police.

1. *The direct examination of Landolfi and Simpson.* At trial, the defendant claimed that Faria was brandishing a gun and that he shot him in self-defense.

The Commonwealth called Landolfi and Simpson as witnesses to testify as to the events that occurred before and at the time of the shooting. Before the trial, both witnesses had given statements to the police and also testified before the grand jury. Each had told the police and the grand jury that the defendant had two guns at the time of the shooting and that Faria was unarmed.

At trial, during his direct examination, Landolfi testified that Faria had a gun and refused to give it to the defendant. He testified further that he was not certain if Faria ever gave the defendant the gun prior to the shooting. This testimony was contrary to his prior statements given to the police and the grand jury.

The prosecutor requested the judge to declare Landolfi to be a hostile witness. The judge examined Landolfi's grand jury testimony and concluded that his trial testimony was inconsistent with that testimony. He cautioned the witness, out of the presence of the jury, about the need to tell the truth and the consequences of perjury.[1] Without explicitly declaring the witness to be hostile, he permitted the prosecutor to ask leading questions of the witness.

It has long been held that "the decision whether to allow leading questions 'should be left for the most part to the wisdom and discretion of the trial judge instead of being restricted by the mechanical operation of inflexible rules.'" *Commonwealth* v. *Flynn*, 362 Mass. 455, 467 (1972), quoting from *Guiffre* v. *Carapezza*, 298 Mass. 458, 460 (1937). In light of

---

[1]On appeal, the defendant claims that the judge should have advised Landolfi of his right to counsel when the judge advised him of the consequences of perjury. The defendant argues that had the witness been advised of his right to counsel, he might have elected not to testify. Aside from the purely speculative nature of the claim, the defendant has no standing to assert the claim, because Landolfi's right to counsel is his alone to assert. Further, the defendant has no standing to argue that Landolfi had a claim under the Fifth Amendment to the United States Constitution. The privilege against self-incrimination is a personal privilege of a witness "not assertable by the defendant." *Commonwealth* v. *Simpson*, 370 Mass. 119, 121 (1976).

the inconsistent, evasive, and ambiguous testimony of Landolfi, it was not error to allow the prosecutor to ask leading questions of the witness. *Commonwealth* v. *Tiexeira*, 29 Mass. App. Ct. 200, 202 (1990).

The defendant's claim that the prosecutor improperly impeached her own witness by prior inconsistent statements is without merit. In compliance with G. L. c. 233, § 23, the prosecutor apprised Landolfi of the time, place, and content of the statements and gave the witness an opportunity to explain them. Further, the judge gave appropriate limiting instructions to the jury about the use of prior inconsistent statements.

Later, during the examination of Landolfi, the prosecutor asked the witness if he had talked to the defendant prior to trial. Upon receiving an affirmative answer and following an objection by defense counsel, the prosecutor, at a sidebar conference, submitted an offer of proof as to the evidence she expected to elicit. Based on the offer, the judge allowed inquiry. The examination revealed that the defendant had talked to the witness, the most recent time within days of the trial. During one of the conversations, the defendant told Landolfi "to forget about" the defendant's statement "doing Brockton a favor." Later, Landolfi acknowledged that the defendant told him that "people were going to be angry" if he (Landolfi) testified that the defendant made that statement before he shot Faria.

"Questions concerning a witness' fear of testifying to the truth, threats by a defendant and statements of a defendant urging a witness to lie are appropriate in the judge's discretion." *Commonwealth* v. *White*, 367 Mass. 280, 284 (1975). Here, the prosecutor properly gave an offer of proof to the judge before asking the witness questions concerning the contents of the witness's conversations with the defendant. There was no abuse of discretion by the judge in permitting the examination of the witness on the subject.

The prosecutor also asked Simpson several leading questions after she testified, in light of her prior statements, in an evasive and equivocal manner. There was no error for the same reasons we gave in regard to similar questions being asked of Landolfi. Further, the judge appropriately allowed the prosecutor to refresh the witness's memory by use of her grand jury testimony. See *Commonwealth* v. *Tiexeira, supra.*

2. *The denial of the defendant's motion for a mistrial.* After Landolfi had testified, the judge, outside the presence of the jury, ordered the witness held on bail pending an action by the district attorney's office regarding possible perjury charges. The defendant moved for a mistrial, claiming the judge's action had the effect of "intimidat[ing] other witnesses very severely." The judge denied the motion.

There is nothing in the record to support the defendant's claim that witnesses refused to testify for the defendant because of the judge's action. Indeed, the defense did produce two witnesses in addition to the defendant. There is nothing that shows that those witnesses shaded their testimony

adversely to the defendant because the judge's action in regard to Landolfi "chilled" them. There was no error in the denial of the motion.

3. *The prosecutor's closing argument.* During her closing argument, the prosecutor argued that Landolfi's "faulty" memory was a result of pressure being put on him by the defendant. She also described Simpson as a "reluctant" witness. The defendant claims that these statements constituted prejudicial error. There was no objection at trial. Therefore, "we review the argument to determine whether there was an error which created a substantial risk of a miscarriage of justice." *Commonwealth v. Sanchez,* 405 Mass. 369, 375 (1989).

"[I]n closing argument, counsel may argue the evidence and the fair inferences which can be drawn from the evidence" (citation omitted). *Commonwealth v. Corriveau,* 396 Mass. 319, 336 (1985). The prosecutor's statements were based on proper inferences from the evidence before the jury. We note that the judge gave strong instructions to the jury about the role of closing arguments. The errors, if any, were cured by the judge's instructions. *Commonwealth v. Corriveau, supra* at 338.

4. *The denial of the motion for a required finding of not guilty.* The defendant claims that the evidence was insufficient to warrant a verdict of guilty of murder in the second degree. He claims, therefore, that the judge committed error in denying his required finding of not guilty.

In order to prove murder in the second degree, the Commonwealth must establish that the killing was accomplished with malice. "Malice aforethought includes any unexcused intent to kill, to do grievous bodily harm, or to do an act creating a plain and strong likelihood that death or grievous harm will follow." *Commonwealth v. Lowe,* 391 Mass. 97, 107 (1984). We have already recited the evidence produced by the Commonwealth. Clearly it was sufficient, so that after viewing the evidence in the light most favorable to the prosecution any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Commonwealth v. Ruci,* 409 Mass. 94, 96 (1991), citing *Commonwealth v. Latimore,* 378 Mass. 671, 677 (1979). Any inconsistencies in the witnesses' testimony "go to their credibility and do not affect the sufficiency of the evidence." *Commonwealth v. Ruci, supra* at 97.

*Judgment affirmed.*

*Robert P. Reardon* for the defendant.

*Mary O'Sullivan Smith,* Assistant District Attorney, for the Commonwealth.