COMMONWEALTH *vs.* ARMANDO RIVERA.

No. 92-P-451.

Suffolk. October 27, 1993. - September 6, 1994.

Present: BROWN, SMITH, & GREENBERG, JJ.

*Evidence*, Prior inconsistent statement, Testimony before grand jury. *Constitutional Law*, Self-incrimination. *Witness*, Self-incrimination. *Practice, Criminal*, Instructions to jury. *Homicide. Self-Defense.*

At a criminal trial, grand jury testimony of two witnesses that was inconsistent with their trial testimony and previously admitted for impeachment purposes was also properly admitted for its probative value where there was no evidence before the trial judge that the witnesses' grand jury testimony had been coerced or was the result of leading questions; where other evidence, apart from one witness's grand jury testimony, that tended to prove the defendant's guilt, was presented at trial; and where the second witness conceded that her grand jury testimony was the truth. [246-250]

The record in a criminal case supported both the motion judge and the trial judge in rejecting claims by two witnesses of their right not to testify at trial based upon their privilege against self-incrimination. [250-251]

At a murder trial, the judge's failure to instruct the jury on voluntary manslaughter as a result of the use of excessive force in self-defense did not create a substantial risk of a miscarriage of justice where there was no evidence to raise the issue of self-defense. [251-252]

INDICTMENTS found and returned in the Superior Court Department on June 13, 1990.

Pretrial motions to compel testimony of a witness were heard by *Vieri Guy Volterra*, J., and the cases were tried before *John F. Moriarty*, J.

*Charles W. Rankin* for the defendant.

*Jane A. Sullivan*, Assistant District Attorney, for the Commonwealth.

SMITH, J. The defendant was the subject of three indictments, namely, murder in the first degree, assault and bat-

tery by means of a dangerous weapon, and armed assault with intent to murder. A Superior Court jury returned verdicts of guilty of murder in the second degree and guilty of assault by means of a dangerous weapon. The defendant was found not guilty of armed assault with intent to murder. On appeal, the defendant claimed that the judge (1) committed reversible error in admitting in evidence prior inconsistent statements of certain witnesses for probative purposes, (2) improperly disallowed the claims of two individuals of their right not to testify based upon their privilege against self-incrimination and (3) improperly failed to instruct the jury on that part of voluntary manslaughter based on excessive use of force in self-defense. We affirm the judgments.

As background for our analysis of the issues we summarize the evidence introduced by the Commonwealth. Sometime around 1:30 or 2 A.M. on May 6, 1990, Jesus Ruiz with his friend Riccardo Ortiz drove to Racine Court in the Mission Hill housing project in Boston in order to buy beer at an after-hours place. Shortly after they arrived, a friend of Ruiz, one Castillo, drove into the area. Ruiz and Castillo decided to engage in an automobile race around the neighborhood. Ruiz finished first, returned to Racine Court, parked his car facing Smith Street and awaited Castillo's return. There were about twenty people in the courtyard at the time.

While Ruiz and Ortiz were waiting for Castillo to return, a young woman, Luz Pizarro, walked by Ruiz's automobile. Ortiz made a rude remark to her. Angel Diaz, a friend of Pizarro, heard the remark, took off his coat and urged Ortiz to get out of the automobile to fight. Ortiz tried to get out but was restrained by Ruiz.

Shortly thereafter a crowd of fifteen to twenty people surrounded Ruiz's automobile. The group consisted of young men and women. They were speaking angrily and loudly, and one of the group repeatedly asked Ruiz what he was doing there. Ruiz became frightened. He backed up his vehicle, raced the engine to scare off the crowd and drove away. As he was driving forward he heard three or four gun shots. The shots came from behind and to the left of Ruiz. He was

wounded in the arm. One of the shots hit the victim, Eddie Rivera, in the back of the head while he was standing between two poles, facing Smith Street. He later died at the hospital. Three bullets were recovered at the scene; all were from the same gun.

1. *Admission of prior inconsistent statements for probative purposes.* It was the Commonwealth's theory at the trial that the angle of the bullets (one hitting Ruiz's arm, one denting his door, the third striking the back of the victim's head) demonstrated that the shots had been fired by a person standing in the back of the courtyard near a tree. If the defendant had been standing in the front of the courtyard next to an incinerator,[1] then it was unlikely he was the person who had fired the gun. Therefore, in order to prove its case, it was necessary for the Commonwealth to place the defendant in the back of the courtyard near the tree at the time the gun was fired.

Pizarro, the object of Ortiz's rude remark, was called by the Commonwealth as a witness. She was a friend of both the victim and the defendant. On direct examination she testified that she heard the defendant say, "Move out of the way." According to Pizarro, the defendant was standing next to the incinerator when he made that remark. She further testified that she was around the corner from Racine Court when she heard the gunshots and therefore she did not know where the defendant was standing when the shots were fired. She stated that only five people were in the area when the shots were fired: the witness, Luz Diaz, Angel Diaz, the defendant and the victim.

The prosecutor called the judge's attention to certain statements that Pizarro had made before the grand jury that were inconsistent with her trial testimony. In particular, Pizarro had told the grand jury that the defendant was standing next to the tree, i.e., the defendant was in the rear of the court-

---

[1]The incinerator actually was a chimney that protruded from a brick wall that formed one of the sides of Racine Court in the front of the courtyard. The witnesses used "wall" and "incinerator" interchangeably. We use the word "incinerator" throughout this opinion.

yard, when he said, "Everybody move out of the way." She further told the grand jury that the defendant was alone next to the tree when Pizarro heard the gunshots. The judge conducted a voir dire to determine the admissibility of Pizarro's grand jury testimony. During the voir dire, Pizarro testified that she could not remember previously having been asked by anyone where the defendant was standing during the shooting. She admitted, however, that she had testified truthfully before the grand jury.

The judge found that Pizarro's grand jury testimony that the defendant was standing by a tree (in the rear of the courtyard) during the shooting was inconsistent with her trial testimony that the defendant was standing by the incinerator (in the front of the courtyard) when he said, "Move out of the way." The judge ruled that Pizarro's grand jury testimony was admissible at least for impeachment purposes and left open the question whether he would admit the grand jury testimony for probative purposes.

Luz Diaz was also called by the Commonwealth as a witness. She too was a friend of the defendant and the victim. She testified on direct examination that she was not in Racine Court when the shooting occurred. She denied knowing who fired the gunshots. She did not see the defendant by the tree and she recalled he was by the incinerator. Her grand jury testimony did not refresh her recollection. After a voir dire, the judge allowed the prosecutor to introduce portions of Diaz's grand jury testimony that were inconsistent with her trial testimony, at least for impeachment purposes.

After the trial jury was called back to the courtroom, Diaz testified that the defendant was standing by the incinerator when the shooting started. She did hear the defendant say, "Move out of the way," but she did not see the defendant shooting. Diaz acknowledged that she had told the grand jury that the defendant "was bending down. He was like, move out of the way, move out of the way, I'm going to shoot. And that's the way he started shooting. . . . [H]e did it by mistake, he killed my friend [the victim] because it was really too close." She further testified that what she told the

grand jury was "what happened" and that she had told the truth to the grand jury.

Diaz further testified at the trial that she saw the defendant at the hospital where the victim had been brought. She did not remember what, if anything, the defendant said to her. Diaz was shown her grand jury testimony but stated it did not refresh her memory. The prosecutor then read to the witness her grand jury testimony as follows:

> "Do you remember being asked at the grand jury, 'Did he try to shoot at the car,' and you answered, 'Yes'? Question: 'Did he say that to you,' and you answered, 'Yes, he did.' Question: 'What did he say,' and your answer was, 'What do you mean?' My question was 'What did [the defendant] say to you,' and your answer was, '[The defendant] told me to move, that he was going to shoot at the car, at the guys, those guys. He was going to shoot at them. That's it.'"

The witness remembered so testifying before the grand jury and stated that it was true.

Diaz then, in response to the prosecutor's questions at the trial, testified that the defendant told her at the hospital that he had shot at the car and that he did not mean to shoot the victim but that he was trying to shoot the occupants of the car.

Before the close of the Commonwealth's case the judge ruled that those portions of Pizarro's and Diaz's grand jury testimony that were inconsistent with their trial testimony and previously admitted for impeachment purposes could also be considered for probative purposes. At that point, the judge gave instructions to the jury that they could, if they found certain conditions to be met, consider "the prior inconsistent statement[s] if [the jury] wishes to do so as substantive evidence . . . ." He repeated those instructions in his final charge to the jury.[2]

---

[2]The defendant does not challenge the content of the instructions on appeal.

On appeal, the defendant does not challenge the judge's findings that Pizarro's and Diaz's grand jury testimony was inconsistent with their trial testimony. Rather, the defendant argues that the requirements for admitting such testimony for probative purposes were not met. He cites *Commonwealth* v. *Daye*, 393 Mass. 55, 75 (1984), in support of his argument.

In *Commonwealth* v. *Daye, supra,* the court held that "a prior inconsistent statement is admissible as probative [evidence] if made under oath before a grand jury, provided the witness can be effectively cross-examined as to the accuracy of the statement, the statement was not coerced and was more than a mere confirmation or denial of an allegation by the interrogator, and other evidence tending to prove the issue is presented." *Ibid. Commonwealth* v. *Noble*, 417 Mass. 341, 344 (1994). Here, the judge ruled that the prerequisites set out in *Daye* had been met. The judge's findings "are conclusive if there is evidence to support them." *Commonwealth* v. *Tiexeira*, 29 Mass. App. Ct. 200, 204 (1990). There was no error.

The defendant does not challenge the judge's findings that Pizarro and Diaz testified under oath before the grand jury and that both were subjected to extensive cross-examination as to that testimony at the trial. Rather, the defendant claims that the witnesses' grand jury testimony was the product of coercion and that their responses were the result of leading questions. Moreover, the defendant argues that his conviction was based solely on the out-of-court grand jury testimony of the witnesses and, therefore, his conviction cannot stand.

There was no evidence before the trial judge that Pizarro's grand jury testimony had been coerced or was the result of leading questions. Further, as the trial judge recognized, there was additional evidence of the defendant's guilt besides Pizarro's grand jury testimony. Independent of her grand jury testimony, Diaz told the trial jury that the defendant admitted that he shot at the car and that he did not mean to shoot the victim. Therefore, other evidence, apart from

Pizarro's grand jury testimony, that tended to prove the defendant's guilt was presented at the trial. See *Commonwealth* v. *Noble, supra* at 344-346.

Because Diaz conceded that her grand jury testimony was the truth, we need not reach the question whether it was properly admitted for probative purposes. *Commonwealth* v. *Daye, supra* at 67 n.13 ("If the witness affirms the truth of the prior statement, [s]he adopts it and no hearsay problem is presented"). *Commonwealth* v. *Tiexeira,* 29 Mass. App. Ct. at 202.

We reject the defendant's claim that Diaz's grand jury testimony had been coerced. In admitting Diaz's grand jury testimony for probative purposes, the trial judge necessarily found that her testimony had not been coerced. There was substantial evidence supporting that conclusion. "The judge's finding is determinative." *Commonwealth* v. *Berrio,* 407 Mass. 37, 45 (1990). We also note that Diaz's responses before the grand jury were not as a result of leading questions.

In sum, there was no error in admitting Pizarro's and Diaz's grand jury testimony for probative purposes.[3]

2. *Denial of witnesses' right to exercise privilege against self-incrimination.* Before trial, the Commonwealth moved to compel the testimony of Pizarro.[4] At the hearings on the Commonwealth's motion, Pizarro, represented by counsel, refused to testify and invoked her Fifth Amendment privilege

---

[3]On appeal, the defendant raises for the first time the argument that the admission of inconsistent prior statements for probative purposes violates art. 12 of the Massachusetts Declaration of Rights. Because that constitutional issue was not raised at trial, we do not reach or discuss it. *Commonwealth* v. *Oakes,* 407 Mass. 92, 98-99 (1990).

[4]The Commonwealth also moved to compel the testimony of Angel Diaz, who was among those present in the courtyard during the incident. At the hearing on the Commonwealth's motion, Diaz invoked his privilege against self-incrimination on the ground that he had committed perjury in his testimony before the grand jury. The motion judge rejected his claim.

At trial, Angel Diaz again invoked his privilege against self-incrimination. The trial judge rejected his claim and ordered him to testify. When he refused, the judge found him to be in contempt and ordered that he be held in custody. He did not testify at the trial. The defendant does not raise any claim of error concerning Angel Diaz.

against self-incrimination. She stated that she had made perjurous statements before the grand jury. The motion judge rejected her claim. Pizarro testified at the trial and did not renew her claim of privilege before the trial began.

During the trial Luz Diaz invoked her privilege against self-incrimination on the ground that she had committed perjury before the grand jury. The trial judge ordered her to testify and she complied with his order.

On appeal, the defendant argues that the motion judge and trial judge committed error when they denied Pizarro and Luz Diaz their right to exercise their privilege against self-incrimination.

The privilege against self-incrimination is personal to the witness; "[t]he defendant has no standing to raise the issue." *Commonwealth* v. *Tiexeira*, 29 Mass. App. Ct. at 207. But see *Commonwealth* v. *Koonce*, 418 Mass. 367, 377-379 (1994). Moreover, both witnesses testified at trial that they had testified truthfully before the grand jury. The record supports the rejection by the motion judge and the trial judge of the witnesses' claims.

3. *The judge's instructions on the possible verdicts.* The defendant claims that the judge committed error in failing to instruct the jury on voluntary manslaughter as a result of the use of excessive force in self-defense. The judge instructed the jury on murder in the first degree, murder in the second degree and involuntary manslaughter. He also instructed the jury on the principles of self-defense.

The defendant included a request for an excessive force voluntary manslaughter instruction in his proposed instructions. It was contained in a proposed instruction labelled "DEFENSE; ACCIDENT." "Inherent in the right to present written requests for instructions and to rulings thereon . . . is the duty to bring the requests clearly to the judge's attention." *Commonwealth* v. *Thompson*, 23 Mass. App. Ct. 114, 116 (1986). The defendant made no mention of this request at the charge conference. Further, he did not object to the absence of the instruction on voluntary manslaughter.

The issue was not preserved. See *Commonwealth* v. *Thompson, supra* at 116.

In any event, the failure to charge the jury on voluntary manslaughter did not create a substantial risk of a miscarriage of justice. There was no evidence in this case that required even a self-defense instruction. Although the judge did give such an instruction, that fact does not mean that he was required, in the circumstances of this case, to instruct the jury on voluntary manslaughter. See *Commonwealth* v. *Curtis*, 417 Mass. 619, 632 n.11 (1994). In order to raise the issue of self-defense, "there must be evidence of an overt act against the defendant constituting an assault or threat, . . . sufficient to place the defendant in actual and reasonable apprehension of grievous bodily harm or death . . . . Moreover, there must be evidence that the defendant 'availed himself of all proper means to avoid physical combat before resorting to the use of deadly force.' " *Commonwealth* v. *Epsom*, 399 Mass. 254, 257-258 (1987). Although there was evidence that the defendant's friends had been arguing with Ruiz and Ortiz before the shooting, there was no evidence, even viewed in the light most favorable to the defendant, sufficient to raise the issue of self-defense. See *Commonwealth* v. *Harrington*, 379 Mass. 446, 450 (1980). Because there was no evidence sufficient to raise the issue of self-defense, the failure to instruct on voluntary manslaughter based on the excessive use of force in self-defense could not have created a miscarriage of justice.

*Judgments affirmed.*