## Commonwealth *vs.* Daniel Johnson.

No. 98-P-2230.

Middlesex. February 16, 2000. - May 30, 2000.

Present: Brown, Porada, & Beck, JJ.

*Constitutional Law,* Search and seizure, Investigatory stop, Reasonable suspicion. *Search and Seizure,* Automobile. *Motor Vehicle,* Firearms. *Evidence,* Prior misconduct, Prior inconsistent statement. *Error, Harmless.*

A police officer investigating a report of gunfire had sufficient information to stop a described motor vehicle in the vicinity of the incident to investigate and inquire of the driver. [275-276]

A police officer had probable cause to search a vehicle for evidence of the crime, discharge of a firearm within 500 feet of a dwelling, for which the officer lawfully attempted to conduct an investigatory stop of the vehicle, whose driver had then thrown a gun from the car and fled, only stopping when confronted with a roadblock. [276]

At a criminal trial, the judge erred in admitting as substantive evidence an affidavit in support of a restraining order against the defendant which the affiant stated she did not remember [278], but, in the circumstances, the affidavit was properly admitted for impeachment purposes [278-279]; the error was harmless in light of the evidence presented and the judge's instructions to the jury [279-280].

Indictments found and returned in the Superior Court Department on June 7, 1995.

A pretrial motion to suppress evidence was heard by *Regina L. Quinlan*, J., and the cases were tried before *Elizabeth J. Dolan*, J.

*George L. Garfinkle* for the defendant.

*Marguerite T. Grant*, Assistant District Attorney, for the Commonwealth.

Porada, J. After a jury trial in the Superior Court, the defendant was convicted of discharging a firearm within 500 feet of a dwelling, unlawful possession of a handgun, unlawful possession of ammunition, failure to stop for a police officer, and operating a motor vehicle negligently so as to endanger the

public. On appeal, the defendant claims that his convictions should be reversed because (1) the motion judge erred in denying his motion to suppress as evidence the handgun and ammunition, and (2) the trial judge erred in admitting in evidence an affidavit executed by the defendant's former girlfriend to obtain a restraining order under G. L. c. 209A against him. We affirm the judgments of conviction.

1. *Motion to suppress.* The defendant claims that the judge erred in denying his motion to suppress because at the time a police officer began his pursuit of the vehicle driven by the defendant, the officer lacked a "reasonable suspicion, based on specific, articulable facts and reasonable inferences therefrom, that an occupant of the . . . motor vehicle had committed, was committing, or was about to commit a crime," *Commonwealth v. Alvarado*, 423 Mass. 266, 268 (1996), and, thus, the subsequent seizure of the handgun and ammunition should be suppressed as fruits of the illegal stop. The motion judge ruled, however, that at the time the pursuit began the police officer had sufficient information to conduct an investigative stop of the vehicle under the principles of *Terry v. Ohio*, 392 U.S. 1 (1968). We recite the judge's findings of facts on which she based her ruling, supplemented by uncontroverted testimony of the police officers at the suppression hearing.

Sergeant Cabral of the Somerville police department was on routine patrol at about 4:00 A.M. when he received a radio call of shots being fired in the area of 102 Broadway Street. He went directly to the area, where he spoke with George Halley of 9 Dell Street in Somerville. Halley told the officer that he was at an automated teller machine across the street from 102 Broadway when he heard shots coming from the area of 102 Broadway and saw an older blue Oldsmobile with a white top pull away from 102 Broadway. Halley informed Sergeant Cabral that he believed the shots came from the Oldsmobile. Sergeant Cabral also spoke with Jeffrey Gates, who resided above the grocery store and hair salon located at 102 Broadway. Gates told the officer that he was awakened by an alarm going off in the grocery store and hair salon and that he went downstairs to shut off the alarm. Upon his return, he heard several shots and told his wife to call the police. A general bulletin was broadcast by the Somerville police to look for an older blue Oldsmobile with a white top that might have been involved in a shooting. Approximately forty-five minutes later,

one and one-half miles from 102 Broadway Street, Sergeant Cabral observed an older blue Oldsmobile with a white top traveling west on Broadway and radioed for assistance. When a backup unit arrived, he put on his lights and directed the vehicle to stop. Instead, the driver of the Oldsmobile accelerated to speeds of thirty-five to fifty-five miles per hour. While Sergeant Cabral was in pursuit, he saw the driver drop an object, which he believed to be a gun, out of the window. The Oldsmobile finally stopped when it hit a State police cruiser which was part of a roadblock created to stop the vehicle. The defendant was the driver and sole occupant of the car. After removing the defendant from the car, Sergeant Cabral placed him under arrest for failure to stop for a police officer. Sergeant Cabral then searched the car without a warrant and found a box of ammunition located in the front between the driver's and passenger's seats and two cartridges on the floor in the back. Another police officer retrieved a handgun from the street where Sergeant Cabral had seen the driver throw an object out of the car.

Where Sergeant Cabral had received a report from a disinterested citizen that gunfire had been discharged from an older blue Oldsmobile with a white top in the vicinity of 102 Broadway Street in a residential and commercial neighborhood at 4:00 A.M., and where Sergeant Cabral saw a vehicle that fit the description in the report some forty-five minutes later traveling west on Broadway Street about one and one-half miles from 102 Broadway, we decide that the judge properly concluded that these facts gave rise to a reasonable suspicion that the defendant's car might have been involved in the shooting, thus justifying an investigative stop and inquiry. Cf. *Commonwealth* v. *Alvarado*, 427 Mass. 277, 281-284 (1998) (police officers were warranted in stopping a motor vehicle for an investigative inquiry where a disinterested citizen had reported that a front seat passenger in the vehicle had an apparent sawed-off shotgun in his possession, which by itself posed an imminent threat to public safety). See *Commonwealth* v. *Stawarz*, 32 Mass. App. Ct. 211, 213 (1992) (reasonable suspicion for stop where police observed vehicle about an hour after and one and one-half miles from the place where a similarly described vehicle was reported stolen). As in *Commonwealth* v. *Alvarado*, 427 Mass. at 283, the nature of the citizen's report here disclosed an imminent danger to public safety warranting at least an investigatory stop of the defendant's vehicle where it fit the description of the car

in the report and was observed in both physical and temporal proximity to the scene of the shooting. Because the stop of the defendant's car was legal, the motion judge properly rejected the defendant's argument that the gun, ammunition, and cartridges should be suppressed as the fruits of the illegal stop.

The defendant also argues that the ammunition and cartridges found in the car should have been suppressed because the search of the defendant's car was conducted by Sergeant Cabral without a warrant. The search occurred after the defendant had been removed from his car and placed under arrest for failure to stop for a police officer and, thus, the defendant argues, it could not have been justified as a search incident to arrest. Although the motion judge made no written findings relating to the search of the automobile and seizure of the ammunition and cartridges, she indicated at the conclusion of the hearing that she was going to deny the motion to suppress this evidence based on the prosecutor's argument. The prosecutor had argued alternatively that the warrantless search of the car was justified as an inventory search, which the defendant does not challenge, or as a search for evidence of the crime initiating the police officer's pursuit, namely the discharging of a firearm within 500 feet of a dwelling. The motion to suppress was properly denied because Sergeant Cabral would have had probable cause to search the car for evidence of the crime which resulted in his initial pursuit of the defendant's vehicle, namely the discharging of a firearm within 500 feet of a dwelling. At the time of the search, Sergeant Cabral knew that a witness had reported gunfire from a vehicle matching the description of the defendant's car, and he had seen the defendant discard what he believed to be a gun and flee from his pursuit. This information gave Sergeant Cabral probable cause to search the vehicle for evidence of the crime resulting in the pursuit. Contrast *Commonwealth* v. *Toole,* 389 Mass. 159, 163-164 (1983) (search of a truck tractor following arrest of driver on an outstanding warrant for assault and battery was illegal where the Commonwealth failed to demonstrate that the police reasonably believed that there was a connection between the vehicle and any criminal activity of the defendant, an essential element to a finding of probable cause).

2. *The restraining order affidavit.* The defendant argues that the trial judge committed reversible error in allowing in

evidence over the objection of the defendant an affidavit[1] executed by the defendant's former girlfriend under the pains and penalties of perjury in support of her application for a restraining order against the defendant under G. L. c. 209A. The defendant argues that its admission was not harmless error because the affidavit contained evidence of prior bad acts of the defendant which would supply a motive or intent for the defendant's alleged actions.

We summarize the evidence pertinent to the issue of whether the affidavit was admissible. The defendant's former girlfriend, Gabriella Correia, was called as a witness for the prosecution. After answering preliminary questions about her name, address, occupation and ownership of a hair salon at 102 Broadway Street, she was asked by the prosecutor whether the defendant came to her hair salon on May 12, 1995, to which she responded she did not recall. To refresh her memory, the Commonwealth showed her a document, purportedly the affidavit she had executed on the evening of May 14, 1995, to obtain a restraining order against the defendant. After the witness examined the affidavit, she testified that although her signature appeared at the bottom of the page, the document was not written by her; that she did not remember applying for a restraining order against the defendant; and that she had no memory of the occurrence of any of the events set forth therein. The prosecutor then asked that the document be admitted in evidence. Over the objection of the defendant, the judge ruled the affidavit admissible as an exhibit, asserting as her rationale the fact that it was a statement made under the penalties of perjury which had been relied upon by a judge to issue a restraining order. Subsequently,

---

[1] The affidavit reads as follows: "On or about 5-12-95, the defendant Daniel Johnson came by my hairdressing shop about 6:30 P.M. He thinks I have a gun belonging to him and he threatened to shoot out my car windows if I don't give it to him. I told him I don't have it and he said 'That's O.K. I have five more,' and he pointed toward his ankle. I did not see a gun but I believe he has access to more. These statements can be corroborated by my friend Jodi Fuller, who was present.

"Approximately two weeks ago we got into an argument and he threatened me with bodily harm, he said he would see to it that I would not ever get back on my feet again.

"Tonight 5-14-95 at approximately 2:15 A.M. I responded to my shop because my alarm company called the answering service and said there were several bullet holes in my store windows. There was and Somerville police responded and took the report."

in her instructions to the jury, she advised the jury that the affidavit could be used both as substantive evidence and for purposes of the prosecutor's impeachment of the witness.

We address first the use of the affidavit as substantive evidence. In admitting the affidavit, the judge apparently relied upon Proposed Mass.R.Evid. 801(d)(1)(A),[2] which allows as substantive evidence prior inconsistent statements that were made under oath at an official proceeding and are offered against a declarant who is testifying at trial and is subject to cross-examination concerning the statements. Where the prerequisites of the rule are met, testimony before a grand jury and at a probable cause hearing have been admitted for substantive purposes. See *Commonwealth* v. *Berrio*, 407 Mass. 37, 43-46 (1990) (grand jury testimony); *Commonwealth* v. *Fort*, 33 Mass. App. Ct. 181, 184-185 (1992) (probable cause hearing); *Commonwealth* v. *Rivera*, 37 Mass. App. Ct. 244, 249-250 (1994) (grand jury testimony). However, in this case, two prerequisites for the admission of the evidence are at issue. One is the existence of an inconsistent statement. Ordinarily, there is no inconsistency between a present failure of memory on the witness stand and a past existence of memory. *Commonwealth* v. *Martin*, 417 Mass. 187, 197 (1994). Liacos, Brodin, & Avery, Massachusetts Evidence § 6.7.2, at 278-279 (7th ed. 1999). Of greater import, however, is the opportunity for meaningful cross-examination of the declarant about the prior statement at trial. *Commonwealth* v. *Daye*, 393 Mass. 55, 73 (1984). "When the witness at trial has no recollection of the events to which the statement relates, this requirement . . . is not met." *Ibid.* See *Commonwealth* v. *Martin, supra.* Such was the case here and, thus, the affidavit should not have been admitted as substantive evidence.

It is a much closer issue whether the affidavit was admissible to impeach the witness. The Supreme Judicial Court has left open the question whether, when the circumstances at trial indicate that a witness is falsifying a lack of memory, a judge may admit the prior statement as "inconsistent" with the claim

[2]Proposed Mass.R.Evid. 801(d)(1) reads as follows: "(d) Statements which are not hearsay. A statement is not hearsay if — (1) Prior statement by witness. The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is (A) inconsistent with his testimony and was given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition."

of lack of memory. *Commonwealth* v. *Daye*, 393 Mass. at 73 n.17. We believe that, in the circumstances presented, the trial judge did not abuse her discretion in admitting the affidavit for impeachment purposes.

In any event, because it was error to admit the affidavit as substantive evidence over the objection of the defendant, we must decide whether the defendant was prejudiced by the admission of the affidavit in evidence. In order to rule the error harmless, we must be convinced that the error did not influence the jury or had but very slight effect. *Commonwealth* v. *Alphas*, 430 Mass. 8, 13 n.7 (1999). We believe the admission of the affidavit would have had but very slight effect on the jury's verdict because the affidavit's content was cumulative of other evidence of the defendant's motive and intent.

The principal thrust of the defendant's argument is that the affidavit supplied the defendant's motive or intent for committing the crimes, namely his ill will toward his girlfriend and desire for revenge. However, the jury heard ample evidence from which they could infer this without the affidavit. A friend of the defendant's former girlfriend, Jodi Fuller, testified that she was present on May 12 when the defendant came into Gabriella Correia's hair salon and demanded the return of an object which Correia denied possessing; that both the defendant and Correia stepped outside the salon; that, because of this conversation, she was concerned enough to continue to observe the defendant and Correia when they were outside the salon; that she observed the defendant point to Correia's car and say, "I'll do your car right here"; and Fuller showed the jury the gunlike gesture he made at that time (allegedly one finger out and his thumb up). Fuller also testified that two days later she accompanied Correia to her hair salon where she observed bullet holes in the salon's windows and thereafter drove with Correia to the Somerville police station where Correia filed a report with the police. A Somerville police officer also testified that, on May 14, Correia came into the police station visibly upset and filed a report against the defendant. While it is true that the affidavit contained a statement of a specific threat to harm Correia, we think this statement would have had but very slight effect on the jury in light of the above recited evidence demonstrating his ill will toward her.

The defendant also makes mention of the fact that the affidavit includes reference to the defendant's possession of at

least five other guns. Here again, we do not think that this statement would have had any influence on the jury's verdict in light of the fact that the defendant was charged with one count of unlawful possession of a handgun, and the Commonwealth produced evidence that he was seen throwing a gun out the window and that the cartridges in his car matched the bullets in the discarded gun which was recovered by the police. In light of this evidence, we do not believe there is any reasonable possibility that this specific statement in the affidavit contributed to the verdict against him. *Commonwealth* v. *Alphas*, 430 Mass. at 23.

Further, in reaching the conclusion that the admission of the affidavit amounted to harmless error, we also consider that the jury were informed that the statements in the affidavit were not tested by cross-examination and that the restraining order was subsequently vacated, and the prosecutor made no mention of the affidavit in her closing argument other than to suggest that it was incredible that Correia could not remember applying for a restraining order.

*Judgments affirmed.*